## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA STYER, | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 3:14-CV-2304 |
| v. | : | (JUDGE NEALON) |
| | : | |
| PROFESSIONAL MEDICAL | : | |
| MANAGEMENT, INC.  d/b/a | : | |
| FINANCIAL RECOVERIES, | : | |
| Defendant | : | |

## MEMORANDUM

On November 5, 2014, Plaintiff, Monica Styer, filed a complaint against

Defendant, Professional Medical Management, Inc., alleging a violation of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").  (Doc.

1).  On March 15, 2015, Plaintiff filed a motion for summary judgment and

supporting documents.  (Docs. 10-12).  On March 16, 2015, Defendant filed a

cross motion for summary judgment and supporting documents.  (Docs. 13-15).

The parties seek judgment on Plaintiff's sole claim raised, specifically whether the

Defendant's disclosure of a quick response code ("QR code") that, when

electronically scanned, reveals Plaintiff's name, address, and account number,

constitutes a violation of section 1692f(8) of the FDCPA.[1]  On March 23, 2015,

---

1.    Pursuant to section 1692f(8) of the FDCPA:

        A debt collector may not use unfair or unconscionable means to

Plaintiff filed her brief in opposition.  (Doc. 17).  On March 26, 2015, Defendant filed its brief in opposition.  (Doc. 18).  On April 13, 2015, Plaintiff filed her reply to Defendant's brief in opposition.  (Doc. 19).  Defendant has not filed a reply to Plaintiff's brief in opposition, and the deadline for such a filing has passed.  <u>See</u> M.D. Pa. L.R. 7.7.  The motions are now ripe for disposition, and for the reasons set forth below, Plaintiff's motion will be granted and Defendant's motion will be denied.

## I.   <u>STATEMENT OF FACTS</u>

The parties filed joint factual and procedural stipulations, which establish that the facts relevant to this case are undisputed.  (Docs. 6, 11, 15).  The parties have stipulated to the following: Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).  (<u>Id.</u> at p. 1).  Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).  (<u>Id.</u>).  "Within the past year [Defendant] was attempting to collect from Plaintiff an account that [Defendant] identified by number ending in 4408."  (<u>Id.</u>).

---

collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

The account is a "debt" as defined by 15 U.S.C. § 1692a(5).  (Docs. 6, 11, 15, p. 1).  At all times relevant to this action, Defendant was acting as a debt collector attempting to collect a debt from Plaintiff.  (Id. at p. 3).

On June 12, 2014, Defendant mailed a letter to Plaintiff in an attempt to collect the aforementioned debt.  (Id. at p. 1).  The letter was mailed in an envelope with a glassine window.  (Id. at pp. 1-2).  Defendant's return address was visible through the window.  (Id. at p. 2).  Also visible through the window was the QR code, which is a specific type of barcode.  (Id.).  The QR code contains encoded information, and can be scanned by certain devices, such as a smartphone, to decode the information and reveal its contents.  (Id.).  Many consumers have these scanner applications installed on their smartphones.  (Id.).  The QR code, if scanned by such a device, would reveal the following information: ONFIRI10,#K#02-12402280-[redacted]4408-2-NCOA, Monica Styer, 12 Tuttle St., Simpson, PA, 184071322129,45,0.  (Id.).  The redacted portion is the account number used by Defendant to identify the Plaintiff's account, and was associated solely with Plaintiff's account.  (Id.).

## II.   **STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once this showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).  All inferences "should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co., 24 F.3d 508, 512 (3d Cir. 1994) (quoting Big Apple BMW, Inc. v. BMW of North Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)).

"The rule is no different where," as in this case, "there are cross-motions for summary judgment." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).  According to the United States Court of Appeals for the Third Circuit:

> [c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

<u>Lawrence</u>, 527 F.3d at 310 (quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241,

245 (3d Cir. 1968)); <u>Holton v. Huff</u>, 2012 U.S. Dist. LEXIS 53185, at *5 (M.D.

Pa. 2012) (Mariani, J.).  On cross motions for summary judgment, "[e]ach movant

must show that no genuine issue of material fact exists; if both parties fail to carry

their respective burdens, the court must deny the motions."  <u>Holton</u>, 2012 U.S.

Dist. LEXIS 53185, at *5 (citing <u>Facenda v. N.F.L. Films, Inc.</u>, 542 F.3d 1007,

1023 (3d Cir. 2008)).  "When reviewing each motion, the court is bound to view

the evidence in the light most favorable to the nonmovant."  <u>Id.</u> (citing FED. R.

CIV. P. 56; <u>United States v. Hall</u>, 730 F. Supp. 646, 648 (M.D. Pa. 1980) (Nealon,

J.)).  "Where there is no material fact in dispute, the moving party need only

establish that it is entitled to judgment as a matter of law."  <u>Schwab v. Reamstown</u>

<u>Mut. Ins. Co.</u>, 2006 U.S. Dist. LEXIS 82815, at *3 (M.D. Pa. 2006) (Caputo, J.).

In the case at bar, the parties submitted identical factual and procedural

stipulations.  (Docs. 11, 15).  Accordingly, for the purposes of deciding these

motions, the only issue is whether Plaintiff or Defendant is entitled to summary

judgment as a matter of law.

## III.   <u>DISCUSSION</u>

### A.   <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff moves for summary judgment on the sole count in her complaint

and seeks: (1) an award of one thousand dollars ($1,000.00), which represents the
maximum statutory damages available under 15 U.S.C. § 1692k(a)(2)(A); and (2)
costs of the action, together with a reasonable attorney's fee as agreed to between
counsel for the parties, or, if they are unable to agree, as determined by the court
upon application by Plaintiff's counsel, subject to objection and response by
Defendant's counsel as to the reasonableness of the attorney's fees and costs
claimed by Plaintiff.  (Doc. 1, p. 9); (Docs. 6, 11, 15, p. 3).

The main thrust of Plaintiff's motion for summary judgment is her argument
that Douglass v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. 2014), is
controlling.  (Doc. 12, p. 10); (Doc. 19, p. 1-2).  Plaintiff states that the "only
factual distinction between the present matter and Douglass is that here the
account number is embedded in a QR code, whereas in Douglass the account
number itself was printed on the letter." (Doc. 12, p. 10).  Plaintiff asserts that this
is a distinction without a difference, and urges this Court, as the Third Circuit did
in Douglass, to "follow the plain language of the statute, which, in relevant part,
prohibits the debt collector from '[u]sing any language or symbol, other than the
debt collector's address, on any envelope when communicating with a consumer
by use of the mails . . . .'"  (Id. at p. 11) (quoting 15 U.S.C. § 1629f(8)).
Following the plain language, Plaintiff argues, "there is no doubt that the QR Code

6

is not permitted by the plain language of the statute." (Doc. 12, p. 10).  Plaintiff

contends that "because the [QR code] is visible through the glassine window, it

therefore violates the FDCPA." (Id. at pp. 11-12).  Furthermore, Plaintiff argues

that "[t]he simple fact that a QR code first must be scanned is not relevant." (Id. at

p. 7).

Plaintiff also contends that this Court should "refuse to adopt a benign

language exception," because "there is no need for a [such an] exception." (Id. at

p. 12).  Even if it is determined that such an exception exists, Plaintiff argues that

the QR code is "not benign." (Id. at pp. 14-16).

**B.    Defendant's Motion for Summary Judgment**

Defendant's summary judgment motion[2] argues that Plaintiff's claim fails as

a matter of law because (1) the QR code is a benign symbol under the FDCPA;

and (2) reading the QR code requires an affirmative and likely illegal act by a third

party. (Doc. 14, pp. 12-19).  For relief, Defendant seeks the entry of an Order

---

2.    As suggested by the parties, this Court set March 15, 2015, a Sunday, as the
deadline for dispositive motions. (Doc. 8).  Defendant filed its motion for
summary judgment on the next available weekday, March, 16, 2015. (Doc.
14).  Although Defendant filed its motion for summary judgment after the
dispositive motion deadline, the fact that Defendant's motion was filed on
the next available weekday renders it a timely filing.  See Miller v.
Ashcroft, 76 F. App'x 457, 459 n.2 (3d Cir. 2003); Keys v. Dist. Attorney
Jacqueline M. Carroll, 2012 U.S. Dist. LEXIS 137930, at *14 (M.D. Pa.
2012) (Caputo, J.).

granting its motion and dismissing Plaintiff's complaint with prejudice. (Doc. 14, p. 4).

Defendant begins the argument section of its brief in support by claiming that the FDCPA was not intended to prohibit the placement of benign symbols on the exterior of a debt collection envelope. (Id. at  p. 7). Instead, according to Defendant, section 1692f(8) of the FDCPA was intended to prohibit debt collectors from embarrassing debtors by placing the delinquency on the outside of the debt collection letter envelope. (Id.) (quoting Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 494 (5th Cir. 2004)). Thus, Defendant argues, "[e]very court presented with a claim under section 1692f(8) has adopted a 'Benign Language and Symbols Exception' to the language to avoid producing absurd results in its enforcement." (Id. at p. 7). Importantly, Defendant concedes that "the Third Circuit has not yet specifically ruled as to whether or not to adopt a benign language and symbols exception." (Id. at p. 10). However, Defendant claims that the Third Circuit has "indicated its approval of the exception" in Douglass, and thus, this Court should adopt the benign language and symbols exception and apply it to the circumstances at bar. (Id.).

Defendant asserts that "where the exception applies, '[a] debt collector does not violate [§ 1692f(8)] by using an envelope with words or notations that do not

suggest the [debt related] purpose of the communication.'" (Doc. 14, pp. 12-13) (quoting <u>Goswami</u>, 377 F.3d at 494) (alterations in original). Using this standard, Defendant argues that "[e]ven when [the QR code is] scanned, the embedded information does not reveal [Defendant's] name, or anything about the contents of the envelope or suggest that what is inside the envelope 'pertain[s] to debt collection.'" (<u>Id.</u>) (quoting <u>Goswami</u>, 377 F.3d at 494; <u>Strand v. Diversified Collection Serv.</u>, 380 F.3d 316, 319 (8th Cir. 2004); <u>Lindbergh v. Transworld Sys.</u>, 846 F. Supp. 175, 180 (D. Conn. 1994); <u>Masuda v. Thomas Richards & Co.</u>, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991)) (fourth alternation in original). Defendant concludes that the disclosure of the QR code on the exterior of the envelope does not violate the FDCPA because "it does not reveal, either on its face or when scanned, Plaintiff's status as a consumer, [Defendant's] status as a debt collector, or that the enclosed correspondence pertains to debt collection." (<u>Id.</u> at pp. 16-17). Defendant contends that "[w]ithout these elements" the QR code qualifies as a benign symbol and thus, its placement on the exterior of a debt collection letter envelope does not violate section 1692f(8) of the FDCPA. (<u>Id.</u> at p. 17).

Furthermore, Defendant argues that Plaintiff's claim fails because "reading the QR Code requires affirmative and likely illegal acts by a third party." (<u>Id.</u>). In

support of this contention, Defendant quotes from <u>Waldron v. Prof'l Med. Mgmt.</u>,

2013 U.S. Dist. LEXIS 34402 (E.D. Pa. 2013).  (Doc. 14, p. 17).  There, the court

held that the disclosure of a quick response code did not violate the FDCPA.

<u>Waldron</u>, 2013 U.S. Dist. LEXIS 34402, at *12.  In furtherance of its holding, the

district court cited to a number of sources that protect the privacy of envelopes

traveling through the mails.  <u>Id.</u> at *10-12.  Although Defendant concedes that

"there exists a possibility that a third-party <u>could</u> take affirmative actions (i.e.

obtaining a QR Code scanner and illegally scanning the letter) to discover

Plaintiff's account number," it argues that it "cannot be held liable for the illegal

actions of third-parties designed to frustrate otherwise lawful debt collection

activities."  (Doc. 14, p. 19) (emphasis in original).

### C.   FDCPA

Congress enacted the FDCPA in 1977:

> to eliminate abusive debt collection practices by debt
> collectors, to insure that those debt collectors who refrain from
> using abusive debt collection practices are not competitively
> disadvantaged, and to promote consistent State action to
> protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).  "These abusive debt collection practices, Congress found,

lead to personal bankruptcies, marital instability, the loss of jobs, and, relevant to

our analysis, 'invasions of individual privacy.'"  <u>Douglass</u>, 765 F.3d at 302 (citing

15 U.S.C. § 1692(a)).  The FDCPA is remedial legislation and "'must be broadly construed in order to give full effect to these purposes.'"  Douglass, 765 F.3d at 302 (quoting Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013)).

To accomplish the FDCPA's  goals, Congress created "a private right of action against debt collectors who fail to comply with [the FDCPA's] provisions." Grubb v. Green Tree Servicing, LLC, 2014 U.S. Dist. LEXIS 100886, at *9 (D.N.J. 2014) (citing 15 U.S.C. § 1692k; Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1171 n.1 (2013); Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)).  The provision of the FDCPA at issue here is section 1692f, which "prohibits a debt collector from using 'unfair or unconscionable means' to collect a debt." Douglass, 765 F.3d at 302 (quoting 15 U.S.C. § 1692f).  Section 1692f "sets out a nonexclusive list of conduct that qualifies as unfair or unconscionable." Id.  Here, Plaintiff claims that Defendant violated subparagraph 8 of section 1692f, which prohibits a debt collector from:

> [u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

### D.    Application of section 1692f(8)

To prevail on her FDCPA claim, Plaintiff must prove that: (1) she is a consumer; (2) Defendant is a debt collector; (3) the Defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it; and (4) Defendant has violated section 1692f(8) of the FDCPA in attempting to collect the debt. Douglass, 765 F.3d at 303 (citing Piper v. Portnoff Law Assos., Ltd., 396 F.3d 227, 232 (3d Cir. 2005)). The only element at issue here is the fourth-whether the undisputed facts establish that, as a matter of law, Defendant has violated section 1692f(8) of the FDCPA. See (Docs. 6, 11, 15, p. 1) (the parties have stipulated that the first three elements of a FDCPA claim have been satisfied).

To answer this question, this Court must look first to the text of the FDCPA. Douglass, 765 F.3d at 302 ("In statutory interpretation, we begin with the text.") (citing Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011)). "If the statute's plain language is unambiguous and expresses [Congress's] intent with sufficient precision, we need not look further." Allen, 629 F.3d at 367 (citing In re Lord Abbett Mut. Funds Fee Litig., 553 F.3d 248, 254 (3d Cir. 2009)). As stated above, section 1692f(8) prohibits the use of "any language or symbol, other than the debt collector's address" and a debt collector's

business name, "if such name does not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8).  "But if the 'literal application of [section 1692f(8)] will produce a result demonstrably at odds with the intentions of its drafters,' then we are obligated to 'construe statutes sensibly and avoid constructions which yield absurd or unjust results.'" Douglass, 765 F.3d at 302 (quoting United States v. Fontain, 697 F.3d 221, 227 (3d Cir. 2012)).  "Where the plain meaning of a statute would lead to an absurd result, we presume 'the legislature intended exceptions to its language [that] would avoid results of this character.'" Id. (quoting Gov't of Virgin Islands v. Berry, 604 F.2d 221, 225 (3d Cir. 1979)) (alteration in original).

The United States Court of Appeals for the Third Circuit interpreted and applied section 1692f(8) in Douglass v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. 2014).  Specifically, in Douglass, the defendant mailed an envelope that displayed, inter alia, an account number associated with the plaintiff.  Id. at 300. The plaintiff alleged that the defendant's mailing of an envelope that displayed the plaintiff's account number violated section 1692f(8) of the FDCPA.  Id. at 301. The defendant moved for summary judgment "contending the account number qualified as 'benign language' that § 1692f(8) was not meant to prohibit."  Id.

As Defendant argues here, (Doc. 14, pp. 12-17), the defendant in Douglass

13

argued that a benign language and symbol exception must be adopted in regards to

section 1692f(8) of the FDCPA.  <u>Douglass</u>, 765 F.3d at 303.  In <u>Douglass</u>, the

defendant did not dispute that the plain language of section 1692f(8) prohibits

"including [the plaintiff's] account number on the face of the envelope."  <u>Id.</u>

Rather, the defendant argued "that a literal application of the statute creates an

absurdity."  <u>Id.</u>  According to the defendant in <u>Douglass</u>:

> [i]f the statute is interpreted to bar any language other than a
> debt collector's name and address, the argument follows, then
> no debt collector could ever send a letter through the mail-the
> envelope could not display the name and address of the
> recipient or even a stamp without violating the FDCPA.

<u>Id.</u>  The defendant claimed "that to prevent absurd results" the Third Circuit "must

adopt a 'benign language' exception to the FDCPA that would allow for markings

on an envelope so long as they do not suggest the letter's purpose of debt

collection or humiliate or threaten the debtor."  <u>Id.</u>

    The Third Circuit rejected the defendant's arguments and found that the

defendant's disclosure of the plaintiff's account number implicated "a core

concern animating the FDCPA–the invasion of privacy."  <u>Id.</u>  According to the

Third Circuit:

> Section 1692(a) of the FDCPA explains that Congress enacted
> the law in response to "abundant evidence" of abusive debt
> collection practices that cause manifest harms to individuals,

14

among them "invasions of individual privacy."

Douglass, 765 F.3d at 303 (citing 15 U.S.C. § 1692(a)).  With this in mind, the

Third Circuit found that "[t]he disclosure of [plaintiff's] account number raises

these privacy concerns."  Id.  The plaintiff's account number, the court stated, was

"a core piece of information pertaining to [plaintiff's] status as a debtor and

[defendant's] debt collection effort."  Id.  Moreover, the Third Circuit concluded

that "disclosure [of the account number] has the potential to cause harm to a

consumer that the FDCPA was enacted to address."  Id. (emphasis added).  As a

result of the foregoing, the Third Circuit held that the plaintiff's account number is

"impermissible language or symbols under § 1692f(8)" because "[c]onstruing §

1692f(8) in accord with the FDCPA's purposes in § 1692(a), we find the statute

not only proscribes potentially harassing and embarrassing language, but also

protects consumers' identifying information."  Id. at 306.

      The Third Circuit went on to find that the disclosure of the plaintiff's

account number was not benign.  Id.  According to the Third Circuit, such a

disclosure was not benign because by divulging such information to the public it

meant it "could be used to expose [the plaintiff's] financial predicament."  Id.

(emphasis added).  Further, the Third Circuit rejected defendant's argument that

because the plaintiff's account number "is a meaningless string of numbers and

letters," its disclosure "has not harmed and could not possibly harm" plaintiff. "

Douglass, 765 F.3d at 306.  Rather, the Third Circuit found that the account

number was not benign because the "account number is not meaningless–it is a

piece of information capable of identifying [plaintiff] as a debtor."  Id.

Additionally, the Third Circuit expressly declined to decide whether

"section 1692f(8) contains a benign language exception because even if such an

exception existed, [the plaintiff's] account number is not benign."  Id. at 303.  In

furtherance of this conclusion, the Third Circuit went on to state that:

> [w]e recognize that 15 U.S.C. § 1692f(8) should not be read to
> create absurd results.  But we believe the disclosure of private
> information in this case is proscribed by the [FDCPA].  We
> express no opinion as to the benign language exception that
> some courts have adopted.

Id. at 306 n.9.

Here, the QR code was visible through the envelope's glassine window.

(Docs. 6, 11, 15, p. 2).  The parties stipulate that the QR code, when electronically

scanned, reveals the following identifying information: ONFIRI10,#K#02-

12402280-[redacted]4408-2-NCOA, Monica Styer, 12 Tuttle St., Simpson, PA,

184071322129,45,0.  (Id.).  The parties also stipulate that "[t]his redacted account

number that is in the QR Code, was a number by which Defendant identified the

Account, and this account number was associated solely with the Account."

(Docs. 6, 11, 15, p. 2).

Like the account number at issue in <u>Douglass</u>, the disclosure of the QR code, which contains Plaintiff's account number, implicates a core concern animating in the FDCPA, specifically the invasion of privacy. 15 U.S.C. § 1692(a); <u>see</u> <u>Douglass</u>, 765 F.3d at 303 (quoting 15 U.S.C. § 1692(a)).  While the core piece of identifying information pertaining to Plaintiff's status as a debtor and Defendant's debt collection effort, Plaintiff's account number, is encoded, the QR code is "susceptible to privacy intrusions." <u>Douglass</u>, 765 at 305.  Specifically, the Defendant's disclosure of the QR code to the public could lead to the exposure of Plaintiff's financial predicament and thus, "has the <u>potential</u> to cause harm to a consumer that the FDCPA was enacted to address." <u>Id.</u> at 306 (emphasis added). Furthermore, as noted above, the FDCPA "'must be broadly construed in order to give full effect to [Congress's remedial] purposes.'" <u>Id.</u> (quoting <u>Caprio</u>, 709 F.3d at 148).  Thus, it is determined that the QR code is an impermissible symbol under section 1692f(8) because it discloses a consumer's identifying information to the public.[3]

_____

3.    Contrary to Defendant's assertion, it need not be decided whether section 1692f(8) contains a benign language exception because, as discussed more fully <u>infra</u>, the QR code is not a benign symbol. <u>See</u> <u>Douglass</u>, 765 F.3d at 303.  This Court notes, as did the Third Circuit, that section 1692f(8) should not be read to create absurd results. <u>See</u> <u>Id.</u> at 306 n.9.  "But we believe the

Assuming, without deciding, that a benign symbol exception was adopted and applied to the instant circumstances, the QR code would still be a violation of the FDCPA because it is not a benign symbol.  Defendant asserts that, without the benefit of a QR code scanner, a QR code is "meaningless black and white markings," and  "does not convey any message on its face, nor does it indicate anything about the contents of the correspondence enclosed in the envelope." (Doc. 14, p. 16).  However, it also does not dispute that the disclosure of the QR code could open Plaintiff up to an invasion of privacy.  (Id.).

In Douglass, the Third Circuit rejected the argument that the account number was a "meaningless string of numbers and letters, and its disclosure has not harmed and could not possibly harm [plaintiff]." Douglass, 765 F.3d at 305. Rather, the account number was found to be "a piece of information capable of identifying [plaintiff] as a debtor." Id. at 306.  Like the account number in Douglass, the QR code is not a meaningless symbol because it is a piece of information capable of identifying Plaintiff as a debtor.  (Docs. 6, 11, 15, p. 2).  In

---

disclosure of private information in this case is proscribed by the Act.  We express no opinion as to the benign language exception that some courts have adopted." Douglass, 765 F.3d at 306 n.9.  Moreover, this decision should not be read as finding that any quick response code disclosed on a debt collection envelope violates the FDCPA.  Rather, this decision is limited to the disclosure of quick response codes that, when scanned, reveal prohibited identifying information, such as the consumer's account number.

18

other words, Defendant's disclosure of the QR code exposes Plaintiff to the

potential harm that the FDCPA was enacted to eliminate.  15 U.S.C. § 1692(a).  As

a result, the QR code does not constitute a benign symbol.

Defendant also argues that Plaintiff's claim fails because reading the QR

code requires an affirmative and likely illegal act by a third party.  (Doc. 14, pp.

17-19).  However, the Third Circuit's reasoning in Douglass limits the

persuasiveness of this argument.  In reaching its decision in Douglass, the Third

Circuit Court of Appeals focused on the public disclosure of the plaintiff's account

number.  Douglass, 765 F.3d at 305-06.  According to the Third Circuit, the

defendant's disclosure of the plaintiff's account number provided the potential that

it could then be used to expose the plaintiff's financial predicament.  Id.  The court

went on to state that an "account number is not meaningless–it is a piece of

information capable of identifying [plaintiff] as a debtor."  Id.  The court reasoned

that because this disclosure by defendant implicated core privacy concerns, "it

cannot be deemed benign."  Id. at 303.  This disclosure, the Third Circuit found,

"has the potential to cause harm to a consumer that the FDCPA was enacted to

address."  Id. at 306.  The fact that the defendant's disclosure of identifying

information was the sole basis for the Third Circuit's holding allows for the

inference that the potential of a third party using, possessing, or transferring

19

plaintiff's account number, was, at best, an insufficient reason to find that the disclosure of an account number was not a violation of the FDCPA.

This reading of <u>Douglass</u> is supported by the fact that, at the time of its decision, the Third Circuit was at least aware of certain laws and regulations that restrict access to the information disclosed on an envelope traveling through the mails. Specifically, in <u>Douglass</u>, the Third Circuit cited to the United States District Court for the Eastern District of Pennsylvania's decision in <u>Waldron</u> as an example of a court that has adopted a benign language exception to the FDCPA. <u>Douglass</u>, 765 F.3d at 304 n.6. Importantly, the district court in <u>Waldron</u> also found that the "law and regulations concerning the handling and security of mail would make the unauthorized scanning . . . difficult at best and likely illegal at worst." <u>Waldron</u>, 2013 U.S. Dist. LEXIS 34402, at *10-12. Thus, having cited to <u>Waldron</u>, it is safe to assume that the Third Circuit was, at the very least, aware of the laws and regulations cited in that decision.

Even though the Third Circuit was aware of these laws and regulations, they were not mentioned in the Third Circuit's decision in <u>Douglass</u>. The Third Circuit also did not address the potential illegality of a third party acquiring, using, or transferring the plaintiff's account number that was disclosed through the glassine window on the envelope in question. Instead, as discussed above, the Third

Circuit focused solely on the "potential" harm that a disclosure "could" have on a consumer in reaching its decision. <u>Douglass</u>, 765 F.3d at 303, 306. Such language, when read in the context of the <u>Douglass</u> decision, weighs in favor of a determination that the relevant inquiry is not whether a third party could lawfully access the disclosed information, but whether the identifying information prohibited by the FDCPA was disclosed to the public and thus, there for the taking.

Furthermore, additional support for rejecting Defendant's argument that Plaintiff's claim fails because reading the QR code requires an affirmative and likely illegal act by a third party can be found in the context and purpose of the FDCPA. <u>Id.</u> at 302. "Section 1692f evinces Congress's intent to screen from public view information pertinent to the debt collection." <u>Id.</u> (citing 15 U.S.C. § 1692f(7) (prohibiting correspondence by post card); <u>see</u> 15 U.S.C. § 1692f(8) (permitting a debt collector's business name to appear on an envelope only if "such name does not indicate that he is in the debt collection business")). Additionally, the Third Circuit has stated that a "core concern" of the FDCPA is the "invasion of privacy." <u>Douglass</u>, 765 F.3d at 303. Clearly, by allowing Defendant to disclose Plaintiff's identifying information to the public, even if such information is embedded in a quick response code, would run afoul of these to

aspects of the FDCPA and, thus, further supports this Court's finding that section 1692f(8) has been violated under the present circumstances.  Douglass, 765 F.3d at 302-03.

## IV.  CONCLUSION

In light of the foregoing, the disclosure of the QR code constitutes a violation of the FDCPA as a matter of law.  Thus, Plaintiff's motion for summary judgment will be granted and Defendant's motion for summary judgment will be denied.  Schwab, 2006 U.S. Dist. LEXIS 82815, at *3 ("Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.").

A separate Order will be issued.


DATE: July 15, 2015                                   /s/ William J. Nealon
                                                                  **United States District Judge**